IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANTWON D. JENKINS, #09778-025, | |
| Plaintiff, | Case No. 25-cv-01220-SPM |
| v. | |
| STEPHEN R. WIGGINTON, MONICA A. STUMP, JAN DOE, SCOTT A. VERSEMAN, DANIAL COOK, STACI M. YANDLE, ORLANDO M. WARD, NICHOLAS MANNS, KEVIN P. MCALEENAN, G. PATRICK MURPHY, DONALD WILKERSON, DAVID R. HERNDON, MICHAEL N. COOK, JOSEPH CHRIST, NANCY J. ROSENSTENGEL, DAVID W. DUGAN, BRENDAN KELLY, and JAMES K. FOGARTY, | |
| Defendant. | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

On July 23, 2023, Plaintiff Antwon Jenkins, also known as "Pooster," was charged in this district with kidnapping and with using or carrying a firearm to commit a federal crime of violence. *See USA v. Jenkins et al,* No. 12-cv-30239-SMY-1, Doc. 1 (S.D. Ill.). These charges were tried before a jury, and after a four-day trial, Jenkins was found guilty on both counts. *Id.* at Doc. 207. Judge Herndon entered judgment on the jury verdict. *Id.* at 261. Jenkins appealed, and the United

State Court of Appeals for the Seventh Circuit reversed the conviction on the gun charge, but the kidnapping conviction was not reversed, vacated, or set aside. *Id.* at Doc. 319.

While the case was pending on appeal, Jenkins filed a pro se motion for the return of his property seized during his criminal investigation. *See USA v. Jenkins et al,* No. 12-cv-30239-SMY-1, Doc. 315 (S.D. Ill.). The motion was received by the Court on September 15, 2016. *Id.* The district judge found the court did not have jurisdiction to hear the motion as the case was then pending with the Seventh Circuit Court of Appeals, and the motion was denied. *Id.* at p. Doc. 316.

Ultimately, on January 29, 2020, Jenkins was resentenced on the kidnapping count and remains incarcerated with the Federal Bureau of Prisons. *See USA v. Jenkins et al,* No. 12-cv-30239-SMY-1, Doc. 406 (S.D. Ill.). On February 2, 2021, Jenkins filed motion for the return of his property. *Id.* at Doc. 434. That motion remains pending.

As if to punctuate his frustration with the pending motion, Jenkins filed this separate case alleging a grand conspiracy featuring a whole host of disparate actors. He seeks compensation for the loss or seizure of his property that occurred during his criminal investigation under the Racketeer Influenced and Corrupt Organization (RICO) statutes, 18 U.S.C. §1962(c) and (d). The property identified in the motion seeking return of his property in his criminal case is the same property identified in this civil action.

While this Court will review in greater detail Jenkins tale of woe;[1] in the end his quest will place him back where he was before commencing this case – litigating this this property claim in his criminal case, *USA v. Jenkins et al,* No. 12-cv-30239-SMY-1 (S.D. Ill.).

---

[1] The Court will review the Complaint pursuant to 28 U.S.C. §1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. §1915A(b).

## ALLEGATIONS

In the Complaint, Jenkins brings two counts under the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. §1962(c) and (d). Under Count 1, Jenkins alleges:

> Defendant Stephen R. Wigginton used his position as US Attorney for the Southern District of Illinois and the US Attorney's Office (located in Fairview Heights, Illinois), which constitutes an "Enterprise" under the R.I.C.O. statute to deprive Jenkins of his property.

(Doc. 1, p. 7). The property taken included Jenkins's Chevy Silverado truck, cameras, a receiver, an X-Box 360, designer clothing, and cell phones. (*Id.*). Jenkins then details a series of events that he claims, "qualify as predicates for a racketeering enterprise." (*Id.*). The qualifying acts are essentially violations of his constitutional rights by Defendants in relation to his criminal investigation, detention, and court hearings. (Doc. 1, p. 11-20).

Jenkins asserts that on July 21, 2012, he was arrested by Defendant McAleenan, an Illinois state police officer, before formal charges were filed, and he was transported to the St. Clair County Jail. (Doc. 1, p. 11). ISP officers and federal agents executed a search of Jenkins's first home, 721 Alhambra Court, that same day and seized property. (*Id.* at p. 12). The following day, July 22, 2012, Jenkins was interviewed by Defendants Daniel Cook, and FBI agent, and Orlando Ward, an East St. Louis police officer. (*Id.* at p. 11). Also that day, Magistrate Judge Donald Wilkerson signed a warrant for Jenkins's arrest. (*Id.* at p. 11). Jenkins was charged with kidnapping and carrying and using a firearm during a crime of violence. (*Id.*). The criminal complaint and the arrest warrant were filed in his criminal case on Monday, July 23, 2012. (*Id.*). Jenkins asserts that because he was arrested without charges being filed, he was set to be released from St. Clair County Jail on July 23, 2012, and therefore, the federal arrest warrant was issued to justify holding him in custody. (*Id.* at p. 11-12). He argues that Judge Wilkerson's "actions of issuing an arrest warrant before charges were initially filed is not a function normally performed by a judge" and

"[Agent] Cook clearly knew that [Judge Wilkerson's] actions violated the constitution." (*Id.* at p. 12).

On July 22, 2012, a search warrant was executed at Jenkins's second house, 1202 Richard Drive, and some of Jenkins's property was seized. (Doc. 1, p. 12). Jenkins's truck was towed on July 24, 2012, at the direction of Officer Ward. (*Id.*). Jenkins asserts that in the affidavit filed in support of the search warrant issued for the truck Agent Cook provided false information, wrongly stating that an "elderly resident" requested for the truck to be towed from the property. (*Id.* at p. 13). Officer Ward did not file a report supporting Agent Cook's version of events. (*Id.*). Additionally, he claims that Agent Cook intentionally damaged the truck during the search. (*Id.* at p. 14). Fabric from the seats and headrest and sections of the dashboard were removed for forensic testing even though Agent Cook knew that there would be "not a presence of blood." (*Id.*). He further alleges, the results from the tests came back "inconclusive." (*Id.*). Following the search, there is no documentation of the truck's location. (*Id.*).

Jenkins concludes that Judge Wilkerson issued the search warrant for his truck knowing that Agent Cook had fabricated evidence and used perjured testimony from Officer Ward, violating clearly established law. (Doc. 1, p. 14).

The following year, in May 2013, Officer Ward, who had been involved in his investigation, was indicted on "federal drug trafficking conspiracy charges." (Doc. 1, p.15).

Jenkins asserts that during the sentencing of his brother, Jevon Jenkins, Defendant Judge Murphy made derogatory and offensive comments regarding Jenkins and his brother. (Doc. 1, p. 16). *See also USA v. Jenkins,* 12-cr-30239-NJR, Doc. 163 (S.D. Ill.). Defendant Assistant United States Attorney Stump did not correct or admonish Judge Murphy for his comments. (*Id.*). Jenkins states that Judge Murphy and AUSA Stump's conduct was racist and violates the Fifth

Amendment. (*Id.*).

On September 15, 2016, Jenkins filed a motion for the return of his property. (Doc. 1, p. 18). His motion was denied by Defendant Judge Herndon on September 21, 2016. (*Id.*); *see also USA v. Jenkins,* No. 12-cr-30239-SMY-1, Doc. 316 (S.D. Ill.). He then filed a motion to reconsider, which was subsequently denied on September 26, 2018. (*Id.*). In March 2021, Jenkins filed a second motion for the return of his property. (Doc. 1, p. 19). As previously discussed, the motion is still pending before Defendant Chief Judge Yandle. (*Id.*).

Under Count 2, Jenkins asserts:

> Conspiracy to commit racketeer influence and corrupt organization (R.I.C.O.) 18 U.S.C. § 1962(c) & (d). [Defendant Officer Ward] conspired with several defendants [to] deprive the Plaintiff of his property (named in Count #1) and $2300, 223 assault rifle, and .357 handgun. Additionally, the Plaintiff paid "bribe money" to [Ward] for "protection," "information (on police activity, federal agents activities and good stash house locations)" and "for introduction to other officers."

(*Id.* at p. 21). Jenkins further states that he sold crack cocaine and powder cocaine to two St. Clair County Court employees, including Defendant James Fogarty, and two St. Clair County Judges, Defendant Judge Michael Cook and Defendant Judge Joseph Christ, now deceased. (*Id.*). He alleges that Defendants FBI Agents Cook and Manns and Illinois State Police Officer McAleenan harassed him by falsely arresting him at least twice. (*Id.*).

Jenkins asserts that beginning in 2007, he paid Defendant Officer Ward monthly payments for protection and information on police activity and investigations. (Doc. 1, p. 21-22). Jenkins states that he ran a "lucrative drug business," and without the assistance of Ward, he would not have been able to sell drugs in East St. Louis. (*Id.*). In 2009, Ward began delivering drugs to Jenkins's house. (*Id.* at p. 23).

In 2010, Agent Cook and Officer McAleenan, and other officers began watching Jenkins's house. (Doc. 1, p. 25). On December 8, 2010, Jenkins states he was falsely arrested by Cook and

McAleenan, as well as Agent Manns, in relation to a car hijacking. (*Id.* at p. 26). Jenkins was subsequently released, and the charges were dropped. (*Id.*). After the arrest, Jenkins met with Ward to discuss the arrest. (*Id.* at p. 27). Ward increased Jenkins's monthly payments owed to him and told Jenkins that he had "things under control." (*Id.*).

On March 11, 2011, McAleenan, Cook, and Manns executed a search warrant of Jenkins's house. (Doc. 1, p. 28). Defendants seized $2,300, an assault rifle, and a handgun. (*Id.*). Jenkins's property was not returned even though no charges were filed. Ward then informed Jenkins that he, Jenkins, was being investigated by federal agents. (*Id.*). Jenkins paid Ward more money to "try to get the fed's eyes off of" Jenkins, and Jenkins stopped selling drugs from his house for six months. (*Id.*). Jenkins was arrested again on October 26, 2011, in connection with robberies. (*Id.* at p. 29). Jenkins was released, and the charges dismissed. (*Id.*). Subsequently, Ward informed Jenkins that Cook, Manns, and McAleenan, "would not stop" until Jenkins was in custody. (*Id.*). Ward "cut off the relationship with Jenkins." (*Id.*). Jenkins continued to sell cocaine, including to St. Clair County Employee Fogarty and St. Clair County Judges Cook and Christ until his arrest on July 21, 2012. (*Id.*).

## DISCUSSION

Under the RICO, Section 1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). For any person "injured in his business or property by reason of a violation" of the RICO statute, 18 U.S.C. § 1964, confers a private right of action for treble damages. *See Bible v. United Student Aid Funds, Inc.,* 799 F. 3d 633, 655 (7th Cir. 2015). RICO, however, "does not cover all instances of wrongdoing. Rather, it

is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity. *Gamboa v. Velez*, 457 F. 3d 703, 705 (7th Cir. 2006) (citations omitted). "In keeping with this limited purpose, there are four elements to a §1962 claim: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id. See also Lachmund v. ADM Investor Serv., Inc.,* 191 F. 3d 777, 783 (7th Cir. 1999).

Jenkins has failed to state a RICO claim against any of the Defendants. The Court first dismisses the RICO claims against Chief Judge Yandle, Judge Murphy, Magistrate Judge Wilkerson, Judge Herndon, Judge Dugan, and Judge Rosenstengel, as these Defendants are protected by judicial immunity. *See Glick v. Gutbrod,* 782 F. 2d 754 (7th Cir. 1986) (affirming district court's dismissal of claims, including a RICO claim, against a judge as barred by judicial immunity); *Davit v. Davit,* 173 F. App'x 515, 518 (7th Cir. 2006). The Seventh Circuit instructs that a judge "will be entitled to absolute judicial immunity if [the judge's] actions meet a two-part test: first, the acts must be within the judge's jurisdiction; second, these acts must be performed in the judge's judicial capacity." *John v. Barron,* 897 F.2d 1387, 1391 (7th Cir.1990). In other words, if the judge has "subject-matter jurisdiction and played a judicial role[,]" then "[t]hat is sufficient for immunity." *Homola v. McNamara,* 59 F. 3d 647, 651 (7th Cir. 1995).

In this case, Magistrate Judge Wilkerson, Judge Murphy, Judge Herndon, Chief Judge Yandle, Judge Dugan, and Judge Rosenstengel had subject matter jurisdiction when engaging in the alleged conduct and were acting in their official capacities when they signed off on warrants, conducted criminal proceedings, denied motions, entered orders, managed their dockets, and assigned cases. Jenkins's assertions that Defendants' conduct was "discriminatory," "racist," or not "normal functions performed by a judge," do not defeat judicial immunity. (Doc. 1, p. 12, 14, 16, 18-19). A "judge will not be deprived of immunity even if the action was in error, was done

maliciously, was in excess of his authority, and even if his exercise of authority is flawed by the commission of grave procedural errors." *Brokaw v. Mercer Cnty.,* 235 F. 3d 1000, 1015 (7th Cir. 2000) (citing *Stump v. Sparkman,* 435 U.S. 349, 356 (1978)). Because there are no facts from which the Court can plausibly infer that the Defendant Judges lacked jurisdiction or were acting outside their judicial roles, judicial immunity protects them from suit. The RICO claims against them are dismissed.

Additionally, with the exception of Judge Wilkerson who on July 25, 2012, signed the warrant authorizing the search of Jenkins's truck alleged to have been used in the kidnapping and Chief Judge Yandle who has a motion regarding the property before her, there are no facts suggesting that the other named Judges had any involvement with the confiscation of Jenkins's property. Jenkins alleges that Judge Murphy made comments about him during his brother's sentencing hearing that Jenkins found offensive; Judge Herndon denied Jenkins's motion to return property because Jenkins's criminal case was pending on appeal; and Judge Dugan and Judge Rosenstengel entered affirmative action standing orders in unrelated cases that were eventually withdrawn. These allegations are completely irrelevant to the assertion that Jenkins was deprived of his property.

The Court further dismisses the RICO claims against the remaining Defendants – US Attorney Wigginton, Assistant US Attorney Stump, Supervising Assistant US Attorney Jane Doe, Assistant US Attorney Verseman, FBI Agent Manns, FBI Agent Cook, Officer Ward, Illinois State Police Officer McAleenan, St. Clair County Judge Christ (deceased), St. Clair County Judge Cook, States Attorney Kelly, and Probation Officer Fogarty. First, Jenkins has failed to identify an "enterprise." As the Seventh Circuit has highlighted:

> An enterprise must be more than a group of people who get together to commit a "pattern of racketeering activity," and more than a group of associated businesses

that are operated in concert under the control of one family. The hallmark of an enterprise is a structure. There must be a structure and goals separate from the predicate acts themselves.

*Richmond v. Nationwide Cassel L.P.,* 52 F. 3d 640, 645 (7th Cir. 1995) (internal citations omitted). Jenkins's Complaint includes "a number of independent individuals who allegedly wronged him in different ways." *Price v. Dvorak,* 8-CV-34 RM, 2009 WL 692216, at *12 (N.D. Ind. 2009). Other than stating that the US Attorney's Office constitutes an enterprise, Jenkins does not make any allegations as to an enterprise between the thirteen Defendants, of whom only four worked for the US Attorney's Office, separate from the predicate acts themselves. He has not included facts on how Defendants' efforts were coordinated or how their individual acts comprised a common course of conduct. In fact, much of the alleged conduct described in the Complaint appears uncoordinated and not even connected. "Nowhere in the complaint does one find anything to indicate a structure of any kind." *Limestone Dev. Corp. v. Vill. of Lemont, Ill.,* 520 F. 3d 797, 804 (7th Cir. 2008). *See also Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (RICO "liability depends on showing that the defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs."). Jenkins's attempt to group thirteen individuals together by making the conclusory assertion that they acted in conspiracy with one another is insufficient to establish an "enterprise" under RICO. The only criminal enterprise Jenkins alleges is his own drug dealing and bribery.

Second, even assuming Defendants' conduct constituted RICO predicate acts, Jenkins has failed to plead how the violation of Section 1962 resulted in his injury. Jenkins asserts that his injury, the taking and damaging of his property, was the result of search warrants issued in March 2011 and July 2012. (Doc. 1, p. 12-13; 28). While the issuance of the search warrants may have been "colored by [the] alleged RICO predicated acts," the issuance and execution of the search

warrants themselves are not criminal acts as defined in 18 U.S.C. §1961. *Adamski v. McGinnis,* 13-cv-962-JPS, 2015 WL 1467818, at *4 (E.D. Wisc. 2015). *See also Smith v. Hilldebrand,* 244 F. App'x 288, 290 (11th Cir.2007) ("It is well settled that the alleged injury must arise from an unlawful act specified in 18 U.S.C. § 1961."). *See Bown v. Oistead,* 125 F. 3d 800, 806 (9th Cir. 1997) ("Civil rights violations…do not fall within the statutory definition of 'racketeering activity.'"). "The absence of a predicate RICO act causing [Jenkins's] injury to his property or business is fatal to his entire complaint." *Adamski,* 2015 WL 1467818, at *4. Because Jenkins has failed to plead facts establishing an enterprise or that the injury to his property was the result of racketeering activity, he has failed to state a claim for civil damages under Section 1962(c).

Section 1962(d) makes it unlawful for "any person to conspire to violate any of the provisions of subsection (a), (b), or (c) [of Section 1962]." 18 U.S.C. § 1962(d). Jenkins alleges that Defendants also conspired to violate the RICO statute. (Doc. 1, p. 21). Because Jenkins has "failed to allege a legal basis for a substantive RICO claim it follows that he lacks a legal basis for a conspiracy claim under RICO." *Talley v. Savage,* No. 22-4186-KSM, 2022 WL 17573403, at *4 n. 8 (E.D. Penn. Dec. 8, 2022) (citing L*ightening Lube, Inc., v. Witco Corp.*, 4 F. 3d 1153, 1191 (3d Cir. 1993)). His conspiracy claim is therefore dismissed.

Jenkins has not stated a claim against any of the named Defendants under 18 U.S.C. § 1964, and therefore, the Complaint will be dismissed in its entirety. When a complaint fails to state a claim upon which relief may be granted, the plaintiff is ordinarily given an opportunity to amend the complaint in order to correct the deficiencies. *See* FED. R. CIV. P. 15(a). However, leave to amend need not be granted if it is clear that any amendment would be futile. *See Always Towing & Recovery, Inc. v. City of Milwauke*e, 2 F.4th 695, 707 (7th Cir. 2021); *Bogie v. Rosenberg,* 705 F.3d 603, 608 (7th Cir. 2013); *Garcia v. City of Chi.,* 24 F.3d 966, 970 (7th Cir. 1994). Jenkins's

Complaint is over twenty pages long and provides a detailed account of the alleged events that he believes support an action for civil damages under RICO. The Court can see no additional facts or details that would turn Jenkins's complaints over the confiscation of his property pursuant to search warrants into a colorable RICO claim. Thus, amendment would be futile.

Although Jenkins has failed to state a colorable RICO claim, the Court notes that it is in no way indifferent to any improper seizure of property by the government. Because Jenkins has filed a motion for return of property pursuant to Federal Rule of Criminal Procedure 41(g) in his criminal case *USA v. Jenkins,* No. 12-cr-30239-SMY-1, Doc. 434 (S.D. Ill.) and such motion remains pending, "a civil action [concerning his property is in fact] already underway." *U.S. Shaaban,* 602 F. 3d 877, 879 (7th Cir. 2010) (once a defendant has been convicted, a motion under 41(g) is deemed to initiate a civil equitable proceeding). There is no reason to allow Plaintiff to amend his Complaint. The Complaint will be dismissed with prejudice.

## DISPOSITION

For the reasons stated above, the Complaint and this entire case are **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. The Court counts the dismissal of this action as one of Jenkins's three "strikes" within the meaning of 28 U.S.C. § 1915(g).

In light of this Order dismissing the case, Jenkins's motion for service on defendants is **DENIED as moot**. (Doc. 11).

If Jenkins wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll (suspend) the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight

(28) days after the entry of the judgment, and this 28-day deadline cannot be extended. If the appeal is found to be nonmeritorious, Jenkins may also incur another "strike."

A motion for leave to appeal *in forma pauperis* ("IFP") must set forth the issues Jenkins plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Jenkins does choose to appeal, he will be liable for the $605.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger,* 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F. 3d 464, 467 (7th Cir. 1998).

The Clerk of Court is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: February 24, 2026**

                                            *s/Stephen P. McGlynn*
                                            **STEPHEN P. MCGLYNN**
                                            **United States District Judge**